UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-26(5) (ECT/LIB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EZELL CORDERO LUCAS,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, Ezell Cordero Lucas, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota ("the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to Distribute Fentanyl and Methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. The defendant fully understands the nature and elements of the crime with which he has been charged.

2.   **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a

1

reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

Starting no later than December 2021 and continuing through February 2024, in the state and district of Minnesota, Mr. Lucas knowingly and intentionally entered into an agreement with others, known and unknown, to distribute fentanyl and methamphetamine. During that timeframe, Mr. Lucas managed a Chicago-based drug trafficking organization ("DTO") that distributed fentanyl and methamphetamine to drug customers in Duluth, Minnesota.

Specifically, Mr. Lucas served as the head of the DTO. At Mr. Lucas's direction, members of the DTO were given distribution quantities of fentanyl and sent to Duluth, where they were stationed and ready to respond to drug orders. Mr. Lucas primarily managed the DTO phone from Chicago and fielded calls from Duluth-based customers. Mr. Lucas then called his distributors in Duluth and directed them to a pre-determined buy location to complete the transactions. At other times, Mr. Lucas himself traveled to Duluth to personally service drug customers.

On February 24, 2022, law enforcement searched Mr. Lucas and another member of the DTO as well as their vehicle. Officers recovered two baggies of fentanyl from the other DTO member. From the search of the defendants and their vehicle, investigators recovered 15.7 grams of fentanyl.

In April 2023, law enforcement apprehended another member of the DTO in Duluth. Officers searched that DTO member, his vehicle, and his apartment. In total, officers recovered approximately 305 grams of fentanyl from that DTO member.

In June 2023, law enforcement identified a home in Duluth from which members of the DTO were conducting narcotics sales. Officers obtained warrants to search the home and two vehicles parked outside. During the search, officers apprehended two members of the DTO and seized 391.8 grams of fentanyl and 262 grams of methamphetamine.

Between July and October 2023, law enforcement conducted a series of additional seizures from members of the DTO. In particular, law enforcement implemented an extensive undercover operation in which an officer operating in an undercover capacity purchased fentanyl from the DTO on 12 separate occasions. The defendant was personally involved in eight of those undercover buys—for seven, he fielded the call on the DTO phone and directed the undercover officer to meet with Mr. Lucas's Duluth-based distributor at a pre-determined location; for one, he personally provided the undercover officer fentanyl in exchange for U.S. currency in Duluth.

Between February 2022 and February 2024, law enforcement seized more than 945 grams of fentanyl and 262 grams of methamphetamine from Mr. Lucas and his co-coconspirators in connection to the DTO's drug trafficking

operations in the Twin Ports region. Mr. Lucas agrees that he and his co-conspirators possessed the illicit narcotics seized as part of their agreement to distribute controlled substances. Mr. Lucas agrees he committed the above-described acts voluntarily, knew he was possessing, dealing, and facilitating the distribution of controlled substances, and knew that conduct was unlawful. Further, the defendant agrees that his above-described distribution activities, conducted in connection with the charged conspiracy, involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present

evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.     **Statutory Penalties.** The defendant understands that Count 1 of the Indictment, charging Conspiracy to Distribute Fentanyl and Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, is a felony offense that carries the following statutory penalties:

    a.   a mandatory minimum of 10 years in prison;

    b.   a maximum of life in prison;

    c.   a supervised release term of at least five (5) years up to a maximum supervised release term of life;

    d.   a maximum fine of $10,000,000;

    e.   a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

    f.   the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

7.     **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

    a.   <u>Base Offense Level</u>. The parties agree that the base offense level is at least **30** (at least 1,000 KG but less than 3,000 KG of Converted Drug Weight) and up to **32** (at least 3,000 KG

               but less than 10,000 KG of Converted Drug Weight). U.S.S.G. § 2D1.1(c)(5) & (c)(4), respectively.

b.     Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

c.     Chapter 3 Adjustments. The parties agree that the defendant was an organizer or leader in the criminal conspiracy charged in Count 1 of the Indictment and that the criminal activity involved five or more participants and was extensive. As such, the parties agree that the defendant should receive a **four-level enhancement** under U.S.S.G. § 3B1.1(a). Aside from acceptance of responsibility, no other Chapter 3 adjustments apply.

d.     Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **two-level reduction** for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **one-level reduction** pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete, and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

               Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **VI**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. Guidelines Range. The Parties anticipate the following potential low and high Guidelines ranges, based on the relevant conduct noted in paragraph 2 and any other potential adjustments described above:

i) **188–235 months**: Criminal History Category VI & Adjusted Offense Level 31, with a base offense level of 30, a four-level role enhancement, and three-level reduction for acceptance of responsibility.

ii) **235–293 months**: Criminal History Category VI & Adjusted Offense Level 33, with a base offense level of 32, a four-level role enhancement, and three-level reduction for acceptance of responsibility.

The defendant understands that, regardless of the Guidelines range, the statutory mandatory minimum sentence in this matter is 10 years (120 months) of imprisonment.

g. Fine Range. If the adjusted offense level is **31**, the Sentencing Guidelines fine range is $30,000 to $10,000,000; if the adjusted offense level in **33**, the Sentencing Guidelines fine range is $35,000 to $10,000,000. U.S.S.G. § 5E1.2(c).

  h. <u>Supervised Release</u>. The Sentencing Guidelines' term of supervised release is five (5) years. U.S.S.G. § 5D1.2.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea. Notwithstanding the reservations above, the government agrees to seek a sentence of no more than **210 months' imprisonment**.

11. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees

to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13. **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any and all property constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of Count 1 of the Indictment, and any and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of said violations.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The

defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

14. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above **293 months' imprisonment**.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes

of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below **188 months' imprisonment**.

15. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges the following: (a) he has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) he fully understands this plea agreement; (c) no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement;

(d) he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) he has entered into this plea agreement freely, voluntarily, and knowingly; and (f) his decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: 7/8/25

BY: _____
Garrett S. Fields
Assistant United States Attorney

Date: _____

_____
Ezell Cordero Lucas
Defendant    7-8-25

Date: July 8, 2025

_____
Steven E. Wolter
Counsel for Defendant